IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JOSEPH ELLIS JONES, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) No. 14-2846-JDT-cgc |
| | ) |
| SHELBY COUNTY, ET AL., | ) |
| | ) |
| Defendants. | ) |

ORDER DISMISSING COMPLAINT,
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On October 24, 2014, Plaintiff Joseph Ellis Jones, III a/k/a Joseph Ellis Jones-Cage, III a/k/a Joseph Ellis Jone-Cage, III, booking number 13114127, a pretrial detainee at the Shelby County Criminal Justice Complex ("Jail") in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, accompanied by a motion seeking leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) In an order issued on October 28, 2014, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as Shelby County; the Office of the Shelby County District Attorney General; the Middle Tennessee Mental Health Institute ("MTMHI"); Dr. Robekeya Farooque; Michael Ebert; Dr. Kumda Vikunth; and Jacquline Armstrong, R.N.[1]

---

[1] The Court construes the allegations about the Jail as an attempt to assert a claim against Shelby County.

Plaintiff's complaint contains no factual allegations. Although he has filed the § 1983 complaint form, the sections for the Statement of Claim and Relief are blank. The complaint form also is not signed, as required by Rule 11(a) of the Federal Rules of Civil Procedure.

Accompanying the complaint is a series of grievances and other documents. The first exhibit, which is taken from a document titled "BLUE HAWK SPEAKS: Dark History of Memphis, Tennessee,"[2] asserts that District Attorney General Amy Weirich has violated Tennessee law by allowing Mary Thomas, the Grand Jury Foreperson, to sign indictments and judge cases without being validly sworn in as a juror. (ECF No. 1-1 at PageID 4.) The next documents are memoranda and other documents about mail delivery. (*Id.* at PageID 5-6, 8.) One memorandum addresses the assessment of the filing fee for another of Plaintiff's lawsuits. (*Id.* at PageID 7.) Plaintiff has submitted a list of medications that he was not permitted to take with him to the MTMHI. (*Id.* at PageID 9.) Another page, titled "52 Week Bible Reading Plan," contains a note complaining that he did not promptly receive his Bible and the reading plan upon his return to the Jail from the MTMHI. (*Id.* at PageID 11.) A page from the inmate handbook has the following statement was circled: "Cups will be washed once a week by the facility food service provider. (Health Department requirement)." Beside that statement is handwritten, "[n]ever ever happens!!" (*Id.* at PageID 13.) Another page from the handbook, addressing rates for outgoing telephone calls, is annotated with the comment, "False[.] NO CALLS @ Anytime is this Price." (*Id.* at PageID 14.)

The next group of documents is a series of grievances addressing opened legal mail (ECF No. 1-2 at PageID 15), the failure to return Plaintiff to his unit promptly after a court appearance so

---

[2] A Google search reveals that similar, but perhaps not identical, material can be found at http://shanafila.wordpress.com/, a blog advocating the removal of Shelby County District Attorney General Amy Weirich.

he could take his medication (*id.* at PageID 16), the failure to allow Plaintiff to take his Bible and medication list to the MTMHI (*id.* at PageID 17 & 18) and the failure to provide Plaintiff with a diabetic snack bag on August 22, 2014 (*id.* at PageID 19). Plaintiff also submitted two documents, both titled "Missing Funds Dispute Form," addressing his claims that legal mail addressed to him was received at the Jail while he was at the MTMHI (*id.* at PageID 20) and that various other property items were missing when he returned from the MTMHI (*id.* at PageID 21). The grievance officer responded to Plaintiff's complaint about opened legal mail by stating that, "Per Ms. Ross of the mailroom they do not open mail, legal mail goes to G.I.U any concerns or questions please address that department." (*Id.* at PageID 22.) In response to his concerns about his legal mail, the Aramark Operations Manager sent Plaintiff a memorandum stating that any mail received while he was at the MTMHI had been returned to sender because he was not incarcerated at the Jail during that time. (ECF No. 1-3 at PageID 23.) In response to his concern about the length of time he waited to be returned to his unit after being in court, the grievance response stated as follows:

> Per Lieutenant Davis he spoke with Officer Wall he stated he did not remember this incident, but he said that all escort inmates are called to be picked up by the escorting Officer. According to the grievance Officer Wall did escort you. He spoke with Lieutenant Kornegay about the length of time it takes to pick up administrative segregation inmates. He stated that his escorting Officers may be stuck with another inmate somewhere else, but if he is informed he can ensure the inmate is returned in a timely manner.

(*Id.* at PageID 30.) Another document appears to state that Plaintiff had requested an extra mattress more than a year ago because of his weight and back. He claims to have been "getting the run around about this." (*Id.* at PageID 24.)

Plaintiff has submitted a copy of the Tennessee Constitution (ECF No. 1-4 at PageID 34-35) and a copy of some of the amendments to the United States Constitution (ECF No. 1-4 at PageID

3

36-41). A handwritten note beside the Eighth Amendment states: "Asian in Cross town charged with shooting 3 or 4 people $50,000 bond[.] I was shot on my case[.] 100,000 & 200,000 Bond 1st time[.]" (*Id.* at PageID 38.)

Finally, Plaintiff has submitted an unsigned note in which he states that Jail staff have held his unspecified property so he could not pursue his lawsuit. (ECF No. 1-5.) He also complains that Jail staff committed mail fraud by returning mail he had received during his stay at the MTMHI to the sender, which sent the false impression that he did not need "LOVE, HELP, AND TLC ANYMORE!" (*Id.*) Some legal mail had been opened outside of Plaintiff's presence. (*Id.*) Plaintiff's right to religious freedom allegedly was violated by the failure to allow him to bring his Bible and reading plan to the MTMHI. (*Id.*) Plaintiff was not permitted to bring his medication list to the MTMHI, and "[t]hey also failed to send, fax, email, or text [his] meds list." (*Id.*) Finally, "[t]his Grand Jury foreman Mary Thomas, the arrest officer as the prosecutor and the sole witness on indictments." (*Id.*)

On December 3, 2014, Plaintiff filed a copy of the standard operating procedure for the Jail governing inmate mail service. (ECF No. 5.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). "Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Id.* (citing *Neitzke*, 490 U.S. at 328-29).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.

*Id.* at 471 (citations and internal quotation marks omitted).

5

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Plaintiff's complaint does not comply with the Federal Rules of Civil Procedure. Rule 8(a)(2) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint violates these provisions when it "is so verbose that the Court cannot identify with clarity the claim(s) of the pleader and adjudicate such claim(s)

6

understandingly on the merits." *Harrell v. Dirs. of Bur. of Narcotics & Dangerous Drugs*, 70 F.R.D. 444, 446 (E.D. Tenn. 1975); *see also Flayter v. Wis. Dep't of Corr.*, 16 F. App'x 507, 509 (7th Cir. 2001) (dismissing 116-page complaint pursuant to Rule 8(a)(2)); *Vicom v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994) (criticizing district court for declining to dismiss amended complaint with prejudice pursuant to Rule 8(a) and noting that "[a] complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation); *Plymale v. Freeman*, No. 90-2202, 1991 WL 54882, at *1 (6th Cir. Apr. 12, 1991) (district court did not abuse its discretion in dismissing with prejudice "rambling" 119-page complaint containing nonsensical claims); *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990) ("A . . . complaint must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is presented and if so what it is. And it must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of that understanding." (citations omitted)); *Michaelis v. Neb. State Bar Ass'n*, 717 F.2d 437, 438-39 (8th Cir. 1983) (per curiam) (affirming dismissal of 98-page complaint where "[t]he style and prolixity of these pleadings would have made an orderly trial impossible"); *Gordon v. Green*, 602 F.2d 743, 744-45 (5th Cir. 1979) (4000-page pleading, comprised of "various complaints, amendments, amended amendments, amendments to amended amendments, and other related papers," did not comply with Rule 8(a) "as a matter of law"); *Windsor v. A Fed. Exec. Agency*, 614 F. Supp. 1255, 1257 (M.D. Tenn. 1983) (ordering plaintiff to amend his complaint to comply with Rule 8 because a 47-page complaint is not required to state a simple claim and because the complaint "is confusing and distracting"). Plaintiff's submission of a stack of documents in place of a complaint does not satisfy the requirements of Rule 8(a)(2).

Plaintiff also has not complied with Rule 8(a)(3), which requires a complaint to contain "a demand for the relief sought."

Even if the Court were to construe Plaintiff's submission as asserting a claim under 42 U.S.C. § 1983 against the named Defendants, it is facially deficient. To state a claim under 42 U.S.C. § 1983,[3] a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). By its terms, § 1983 does not provide a cause of action for violations of the Tennessee Constitution or Tennessee law. Alleged violations of Jail policy also are not actionable under § 1983. *See Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)).[4]

The Tennessee Court of Appeals has held that there is no private right of action for damages under the Tennessee Constitution. *See Bowden Bldg. Corp. v. Tenn. Real Estate Comm'n*, 15

---

[3] Section 1983 provides: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

[4] In *Levine*, 986 F.2d at 1515, a habeas case, the Court of Appeals stated that "[a] state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable."

S.W.3d 434, 444-45 (Tenn. Ct. App. 1999), *appeal denied* (Tenn. Feb. 14, 2000); *Lee v. Ladd*, 834 S.W.2d 323, 324-25 (Tenn. Ct. App. Mar. 4, 1992). The Sixth Circuit has held the same. *See Cline v. Rogers*, 87 F.3d 176, 179-80 (6th Cir. 1996); *see also Peterson v. Dean*, Civil Action No. 3:09-cv-628, 2009 WL 3517542, at *1 (M.D. Tenn. Oct. 23, 2009) ("Tennessee does not allow for a private right of action for damages based on violations of the Tennessee Constitution") (emphasis omitted); *Alexander v. Beale Street Blues Co.*, 108 F. Supp. 2d 934, 945 (W.D. Tenn. 1999).

The complaint contains no factual allegations against any of the Defendants. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The MTMHI and the Office of the Shelby County District Attorney General are both arms of the State of Tennessee.[5] The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v.*

---

[5] *See* http://tn.gov/mental/mhs/mhs2.html ("The Tennessee Department of Mental Health and Substance Abuse operates 4 Regional Mental Health Institutes (RMHIs) which provide in-patient psychiatric services for adults," including the MTMHI); http://tn.gov/mental/mhs/MiddleMHL.html.

The Shelby County District Attorney General is also known as the District Attorney General for the Thirtieth Judicial District at Memphis. The position of District Attorney General is established pursuant to state law. *See* Tenn. Code Ann. §§ 8-7-101 ("Each judicial district shall constitute a district attorney general's district."), 8-7-103 (duties). The district attorney generals are part of the executive branch of state government. *State v. Head*, 971 S.W.2d 49, 51 (Tenn. Crim. App. 1997).

*Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

The complaint does not assert a valid claim against Shelby County. When a § 1983 claim is made against a municipality, the court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Even if it were assumed that the complaint alleged a violation of Plaintiff's constitutional rights, the second issue would be dispositive of Plaintiff's claim against Shelby County.

A local government "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436

U.S. at 691-92; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)) (citation omitted). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)).

Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, *see, e.g., Fowler v. Campbell*, No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); *Yeackering v. Ankrom*, No. 4:05-CV-00018-M, 2005 WL 1877964, at *2 (W.D. Ky. Aug. 5, 2005); *Oliver v. City of Memphis*, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); *cf. Raub v. Corr. Med. Servs., Inc.*, No. 06-13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint contained

11

conclusory allegations of a custom or practice); *Cleary v. Cnty. of Macomb*, No. 06-15505, 2007 WL 2669102, at *20 (E.D. Mich. Sept. 6, 2007) (same); *Morningstar v. City of Detroit*, No. 06-11073, 2007 WL 2669156, at *8 (E.D. Mich. Sept. 6, 2007) (same); *Chidester v. City of Memphis*, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005). The complaint does not allege that Plaintiff suffered any injury arising from an unconstitutional policy or custom of Shelby County.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. Rhode Island*, 511 F. App'x 4, 5 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 511 F. App'x at 5; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every sua sponte dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). The factual allegations in Plaintiff's complaint are insufficient to persuade the Court to exercise its discretion to grant leave to amend.

Therefore, the Court DISMISSES Plaintiff's complaint for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Plaintiff's claims against the Office of the Shelby County District Attorney General and the MTMHI are also DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(2) insofar as they seek an award of money damages.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b).

Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 733 F.3d 175, 177-78 (6th Cir. 2013), *cert. granted,* 82 U.S.L.W. 3675 (U.S. Oct. 2, 2014) (Nos. 13-1333, 13A985).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE